## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 88 C 3773 | **DATE** | 2/28/2002 |
| **CASE TITLE** | BIONDO et al vs. CITY OF CHICAGO | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial set for April 18, 2002 at 4:30 pm.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Trial held - bench. Trial ends for the first ten plaintiffs. Trial on the second set of ten plaintiffs is set for 4/29/02 at 9:00 am. The parties are to submit the joint final pretrial order on the next ten plaintiffs with all motions in limine and supporting memoranda by 4/4/02. Responses are to be filed by 4/11/02. Trial on the third set of ten plaintiffs is set for 6/17/02 at 9:00 am. Pretrial conference is set for 6/6/02 at 4:30pm. The parties are to submit the joint final pretrial order on the next ten plaintiffs with all motions in limine and supporting memoranda by 5/23/02. Responses are to be filed by 5/30/02.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | |
|---|---|---|---|---|
| ✓ | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 0 1 2002 | |
| | Notified counsel by telephone. | | date docketed | 565 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | CLERK | | |
| JS | courtroom deputy's initials | 02 MAR -1 AM 8:20 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
MAR 0 1 2002

PETER BIONDO, JOHN BYRNE, )
TIMOTHY CORCORAN, BRIAN GILHOOLY, )
PATRICK JOYCE, THOMAS MALISKA, )
BERNARD MCDEVITT, DAVID MCELROY, )
MICHAEL TIMOTHY and MARTIN WIRTZ, )
)
    Plaintiff-Intervenors, )
) No. 88 CV 3773
vs. )
) Judge James F. Holderman
CITY OF CHICAGO, )
    a municipal corporation )
)
    Defendant. )

## MEMORANDUM OPINION DIRECTING ENTRY OF JUDGMENTS

On October 4, 2000, a jury returned a verdict in this case finding that the Chicago Fire Department ("CFD") 1986 Lieutenant's Examination did not discriminate against minorities. That finding was supported by a preponderance of the evidence. That evidence established that the defendant City of Chicago ("City") was liable to the class of white plaintiff-intervenors whose promotions to the rank of Lieutenant in the CFD were delayed or denied as a result of the City's unconstitutional, intentional use of race in the making of the City's decisions regarding promotions to the rank of Lieutenant in the CFD from the CFD's 1986 Lieutenant's Examination Promotional List. After that verdict, discovery proceeded regarding the individual class members' respective damages claims. The jury trial of ten individual plaintiffs' damages claims commenced on February 11, 2002 before this court.

On February 20, 2002, the jury returned a verdict finding the amount of back pay damages owed by the City to each of the ten individual plaintiff class members. That jury also determined the emotional distress damages suffered by each of these ten individual plaintiffs. The jury additionally made specific findings as to the dates and probability each of the ten plaintiffs would have been promoted beyond the CFD rank of

Lieutenant to the CFD rank of Captain, as well as the dates and probability each plaintiff would have been promoted to the CFD rank of Battalion Chief had each plaintiff's promotion to the CFD rank of Lieutenant not been delayed or denied by the City's intentional race discrimination.

While the jury was deliberating on its verdicts, this court heard further evidence pertinent to the equitable issues that are the court's duty to decide: reinstatement, front pay, pension benefits, and the application of prejudgment interest to the jury's back pay determinations. Final arguments by counsel to the court on those equitable issues were commenced on February 21, 2002 and completed on February 28, 2002. This opinion plus the court's comments made in the open court proceeding on February 28, 2002 constitute this court's findings and conclusions on those equitable issues.

### I. THE JURY'S VERDICTS

The jury's general verdicts as to the damages owed by the City to each plaintiff were follows:

| Plaintiff | Back Pay Damages | Emotional Distress Damages |
|---|---|---|
| Peter Biondo | $112,000 | $125,000 |
| John Byrne | $ 96,000 | $125,000 |
| Timothy Corcoran | $167,000 | $125,000 |
| Brian Gilhooly | $156,000 | $125,000 |
| Patrick Joyce | $165,000 | $125,000 |
| Thomas Maliska | $115,000 | $125,000 |
| Bernard McDevitt | $125,000 | $125,000 |
| David McElroy | $173,000 | $125,000 |
| Michael Timothy | $ 24,000 | $ 10,000 |
| Martin Wirtz | $ 89,000 | $ 20,000 |

The jury's answers to the specific written questions posed to the jury regarding each plaintiff's promotional probabilities and probable dates of promotion had the City not delayed or denied each plaintiff's promotion to the CFD rank of Lieutenant were consistent with the procedure followed by the district judge in Bishop v. Gainer, 272 F.3d 1009, 1016 (7th Cir. 2001) and were as follows:

2

| Plaintiff | Probability of Promotion to Captain | Probable Date to Captain | Probability of Promotion to Battalion Chief | Probable Date to Battalion Chief |
|---|---|---|---|---|
| Peter Biondo | 100% | 08/16/93 | 100% | 04/16/00 |
| John Byrne | 100% | 08/16/93 | 100% | 04/16/00 |
| Timothy Corcoran | 100% | 08/16/93 | 28% | None |
| Brian Gilhooly | 100% | 08/16/93 | 100% | 12/01/00 |
| Patrick Joyce | 100% | 08/16/93 | 57% | 12/01/00 |
| Thomas Maliska | 100% | 11/16/00 | 14% | None |
| Bernard McDevitt | 100% | 11/16/00 | 0% | None |
| David McElroy | 100% | 08/16/93 | 86% | 04/16/00 |
| Michael Timothy | 100% | 07/16/92 | 100% | 07/01/99 |
| Martin Wirtz | 100% | 08/01/95 | 100% | 04/01/00 |

Before deliberating on these verdicts, the jury was properly instructed on the law. Among those instructions, the jury was told:

> In determining the amount of any damages, both the back pay damages and the emotional distress damages, that you decide to award, you should be guided by dispassionate common sense. You must use sound discretion in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages by way of punishment or through sympathy. You must not engage in speculation, conjecture or guess work. On the other hand, the law does not require that the Plaintiff prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as circumstances permit.

The jury clearly heeded the instructions because the jury's verdicts as to each plaintiff's damages are each fully supported by the evidence, bear a rational connection to the evidence, are not excessive, and appear to be in no way the product of passion, see DeBiasio v. Illinois Central Railroad, 52 F.3d 678, 687-88 (7th Cir. 1995); Gorlikowski v. Tolbert, 52 F.3d 1439, 1446 (7th Cir. 1995). In fact, each of the jury's back pay findings is thousands of dollars less than the maximum plaintiffs' expert, Dr. Goldman, had estimated each plaintiff could receive as stated in Plaintiff's Exhibit 2A, which was admitted in evidence at the trial with "No objection" from defense counsel.

Of the back pay and emotional distress damages awarded to each plaintiff, the jury appropriately awarded the least amount to plaintiff Michael Timothy who, despite the City's unlawful acts against him, ranked high enough on the 1986 Lieutenant's Exam Promotional List to be promoted to the rank of Lieutenant in the CFD on September 1, 1991. Michael Timothy, thereafter, attained the CFD ranks of Captain and Battalion Chief on August 16, 1993 and April 1, 2000 respectively. The jury found that if the City had not discriminated against him, Michael Timothy probably would have achieved the rank of Captain a year and a month earlier on July 16, 1992, and the rank Battalion Chief nine months earlier on July 1, 1999.

The next least back pay and emotional distress damages was awarded by the jury to the next highest CFD ranked plaintiff, Martin Wirtz, who also was promoted to the rank of Lieutenant on September 1, 1991 from the 1986 Lieutenant's Exam Promotional List despite the fact that the City had discriminated against him. Martin Wirtz attained the rank of Captain in the CFD nine years and three months later on December 16, 2000. The jury found plaintiff Martin Wirtz probably would have achieved Captain in less than four years on August 1, 1995, had the City not discriminated against him. The jury also found he probably would have achieved the rank of Battalion Chief by April 1, 2000. These finding are all well-supported by the evidence.

The back pay and emotional distress damage awards found by the jury in favor of each of the other eight plaintiffs were likewise reasonable and supported by fair inferences from the evidence. Although the City, after the jury's verdicts were returned, presented in Defendant's Exhibit 7 the exact, to the penny, mathematical calculations of the amounts the City believes the jury should have awarded to each plaintiff in back pay, no request for such precision was made by the City or anyone to the jury. In fact, as stated earlier, the jury was instructed "mathematical precision" was not a requirement for the jury's verdicts. The jury, as it was entitled to do, rounded its damages figures to the nearest $1000.

The jury's verdicts clearly reflect a reasonable analysis of the damages evidence presented by each individual plaintiff in the case, both the back pay and emotional distress damages. The jury clearly and appropriately differentiated among the individual plaintiffs based upon the evidence relating to each of them such as their pertinent CFD promotional exam scores, their rankings and their record in the CFD, as well as the intangible factors, such as each individual plaintiff's dedication, determination, courage, and leadership skills. The jury's verdicts also fairly reflected the evidence as to the emotional distress caused to each of the plaintiffs by the City's discrimination. The jury through its answers to the interrogatories posed to it selected the probable dates of promotion for each plaintiff, as well as the probability of each plaintiff attaining the rank of Captain and the rank of Battalion Chief had the City not engaged in its wrongful conduct. The jury through its back pay awards to each plaintiff reflected the possibility of certain plaintiffs attaining the higher promotional rank earlier than the probable date, by awarding them less back pay, and the possibility of certain of the other plaintiffs attaining the higher promotional rank later than the probable date, by awarding more back pay, than the precise amounts proposed by the City's post-verdict in Defendant's Exhibit 7. As stated earlier, the jury's verdicts were well-reasoned and are supported by the evidence presented at the trial.

## II. PREJUDGMENT INTEREST

Prejudgment interest has been recognized as an element of complete compensation and a normal incident of relief under Title VII. Leoffler v. Frank, 486 U.S. 549, 558 (1988). In the Seventh Circuit, prejudgment interest is within the discretion of the district court to award, but remains presumptively available to victims of federal law violations, Hutchison v. Amateur Electronic Supply, Inc., 42 F.3d 1037, 1046-48 (7th Cir. 1994); Gorenstein Enterprises v. Quality Care-USA, 874 F.2d 431, 436 (7th Cir. 1989). These ten plaintiffs have had to wait since 1988 to have their claims adjudicated despite this court best efforts to get counsel to move this litigation along in a more timely manner. Although the City's counsel on pages 10 and 11 of "Defendant City of Chicago's Brief on Equitable Relief" filed on February 27, 2000, has tried to blame the

5

delays in this case on counsel for the plaintiff-intervenors, this court will not in this opinion point the finger of blame for the delay in this litigation on one side or the other, a lot of factors have contributed, and the court has on earlier occasions expressed its frustration about counsel. The fact, however, remains that the whole time this case has been pending, the City has not had to act "as an uncompensated trustee or investment manger," In re Milwaukee Cheese Wisconsin, Inc., 112 F.3d 845, 849 (7th Cir. 1997), but has had the complete benefit and full use of the back pay amounts it has owed and has not paid to these plaintiffs. There has been no reason presented to this court which is sufficient to overcome the presumption that prejudgment interest on the back pay amounts owed by the City to these ten plaintiff should be ordered as part of the judgments entered in favor of each of these plaintiffs and against the City at this time.

Unlike post-judgment interest, there, however, is no statutory rate of prejudgment interest. After entry of the individual judgment orders, the statutory post-judgment interest on each total monetary judgment will commence to accrue. As for the prejudgment interest, the parties here agreed on the calculational method that the court has used in computing the prejudgment interest which is part of the monetary damages owed by the City to each plaintiff. The amount was computed as the compound interest accumulated starting at August 1996 which is the midpoint of the general loss period on the full back pay damage award of each plaintiff using annual one-year U.S. Treasury obligation rates for each year of the period August 1996 to end of February 2002.

The following agreed upon annualized one-year rates were used.

| | |
|---|---|
| 1996 (5 months) | 5.52% |
| 1997 | 5.63% |
| 1998 | 5.05% |
| 1999 | 5.08% |
| 2000 | 6.11% |
| 2001 | 3.49% |
| 2002 (2 months) | 1.71% |

6

From these rates a prejudgment interest factor ("PIF") was determined by multiplying the annualized rates reduced to the number of months appropriate for each year. For the years 1997, 1998, 1999, 2000, and 2001, twelve months were used. For the year 1996, five months August through December, were used. For the year 2002, two months, January and February, were used because the judgment as to the ten plaintiffs in this the first of several trials on damages for the individual plaintiff class members could not be entered until the end of February 2002, because counsel for both sides needed additional time to present the parties' respective positions. The PIF calculation on the prejudgment interest amount is as follows:

$$PIF = (1.023)(1.0563)(1.0505)(1.0508)(1.0611)(1.0349)((1.00285) = 1.313619887$$

Using the PIF, the court has calculated the prejudgment interest owed by the City to each plaintiff as follows: each individual plaintiff's back pay, as determined by the jury's verdict to be owed by the City, was multiplied by the PIF and that individual plaintiff's back pay was then subtracted from that figure. The remaining amount is the prejudgment interest owed by the City to each plaintiff on that plaintiff's back pay. The individual back pay amounts which are due from the City to each plaintiff are stated on each individual plaintiff's judgment order which has been signed by the court and is directed to be entered herein.

## III. REINSTATEMENT

Under Title VII, this court is authorized "to order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . ., or any other equitable relief as 2000e-5(g)(1)". Each plaintiff, according to the jury's verdicts and answers which are well-supported by a preponderance of the evidence, would have advanced beyond the CFD rank of Lieutenant. The parties had stipulated before the trial that each plaintiff would have become a Lieutenant had it not been for the City's discriminatory acts of first promoting others to Lieutenant on the basis of race.

7

Each plaintiff also was determined by the jury to have a 100% probability have attaining the CFD rank of Captain by no later than November 11, 2000. Eight of the ten plaintiffs had a probably of attaining the Captain's rank by August 16, 1993. Seven of those eight had a greater than 50% chance of becoming a Battalion Chief within the year 2000 or earlier, with five of those seven having a 100% probability of doing so by that time.

It is very understandable why each plaintiff requests the remedy of reinstatement to the rank each would probably have attained were it not for the City's wrongful conduct. The court certainly appreciates each plaintiff's position, but despite the jury's individual assessments of the probabilities of advancement based on the evidence, the reality is that no ranking commanding officer in the CFD who attained a promotion in rank because a federal judge ordered reinstatement to that rank would, receive the same the respect and confidence from his subordinates and peers when making decisions and giving orders at the scene of a fire or elsewhere as another CFD officer who achieved his promotion in rank through his success on the rigorous promotional tests typically used by the CFD to determine career service promotions. Indeed, though each plaintiff deserves to hold the respective rank denied him by the City's unlawful conduct, this court, in considering all the equities including the public's interest, does not believe court-ordered reinstatement promotions in rank is an appropriate equitable resolution, beyond that to which the City has already agreed. That agreement by the City allows for the promotion of each plaintiff to the CFD rank of Lieutenant retroactive to the date each should have advanced to the rank of Lieutenant based on the 1986 Lieutenant's Exam Promotional List had the City not unlawfully discriminated against him. To attain the CFD career service rank which each plaintiff desires to have and to achieve the proper respect and confidence from peers, subordinates and the public, each of the plaintiffs, who have not already done so, will have to succeed on the appropriate CFD promotional exams and abide by the CFD promotional process conducted in a fair and unbiased manner. No other way of advancement in the CFD is equitably appropriate considering all of the equitable factors. Therefore, any

further court-ordered reinstatement to higher CFD career service ranks, in this court's view, is equitably unavailable to these plaintiffs under the circumstances presented here.

## IV. FRONT PAY

Because reinstatement to the higher CFD career service ranks which the jury found probably would have been attained by these plaintiffs are, in this court's view, unavailable from an equitable standpoint, this court finds that awarding front pay which is reasonable in amount and duration is appropriate as an equitable remedy in lieu of reinstatement. The Seventh Circuit in Williams v. Pharmcia, 137 F.3d 944, 951 (7th Cir. 1998) stated:

> The district judge approached front pay as an equitable remedy, deciding it on his own rather than submitting it to the jury. We approve this course of action and join the other circuits that have held that front pay may be awarded under Title VII in cases where reinstatement is unavailable. See, e.g. Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1177 n. 7 (2d Cir. 1996); Winsor V. Hinckley Dodge, Inc., 79 F.3d 996, 1002 (10th Cir. 1996); Weaver v. Casa Gallardo, 922 F.2d 1515, 1528 (11th Cir. 1991); Shore v. Federal Express Corp., 777 F.2d 1155, 1159 (6th Cir. 1985).

As for determining the amount of front pay that equitably should be paid to each plaintiff, the evidence established that each plaintiff had a 100% probability of promotion to Captain in or before the year 2000, and that plaintiffs Peter Biondo, John Byrne, Brian Gilhooly, and Martin Wirtz had a 100% probability of being promoted to Battalion Chief by no later than the end of 2000. Therefore, the court finds that it is equitable and appropriate to award an amount of front pay starting March 1, 2002, the date of entry of judgment, to each of the plaintiffs who have not otherwise attained those respective CFD ranks. Therefore, the court believes that, in lieu of reinstatement, starting on March 1, 2002, plaintiffs Timothy Corcoran, Patrick Joyce, Thomas Maliska, Bernard McDevitt, and David McElroy should commence receiving no less than a CFD Captain's salary as their regular periodic wages, and plaintiffs Peter Biondo, John Byrne, Brian Gilholly, and Martin Wirtz should commence receiving no less than a CFD Battalion Chief's salary as their regular periodic wages as the equitable front pay owed to them by the City.

As the Seventh Circuit also stated in Williams, supra, 137 F.3d at 951:

> Front pay in the Title VII context is best understood as "a monetary award equal to the gain [the plaintiff] would have obtained if reinstated." Tobey v. Extel/JWP, Inc., 985 F.2d 330, 332 (7th Cir. 1993); see also Avitia v. Metropolitan Club of Chicago, Inc., 49 F.3d 1219, 1232 (7th Cir. 1995) (describing front pay as "a substitute for reinstatement"). Generally, front pay is awarded as a substitute remedy only when reinstatement is inappropriate, such as when "There [is] no position available or the employer-employee relationship [is] pervaded by hostility." McNeil v. Economics Lab., Inc., 800 F.2d 111, 118 (7th Cir. 1986), cert. denied, 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987), overruled on other grounds, Coston v. Plitt Theaters, Inc., 860 F.2d 834, 836 (7th Cir. 1988).
>
> Title VII explicitly authorized reinstatement as an equitable remedy; front pay is the functional equivalent of reinstatement because it is a substitute remedy that affords the plaintiff the same benefit (or as close an approximation as possible) as the plaintiff would have received had she been reinstated. As the equivalent of reinstatement, front pay falls squarely within the statutory language authorizing "any other equitable relief."

Of course, limiting front pay awards to a reasonable duration is appropriate. The goal of front pay is to replicate the amount of pay a plaintiff would have obtained had reinstatement been available. Id. at 953. A front pay award should only last until the employee can reasonably be expected to have moved on to similar or superior employment. Id. Applied to the facts here, the front pay amounts ordered by the court should only last so long as is reasonable to allow the plaintiffs to attain the actual CFD promotion to the upper CFD career service ranks which the facts showed each plaintiff would probably have previously attained had the City not intentionally engaged in race discrimination. The court believes that balancing the equities on an individual basis is necessary to fashion a proper and equitable result for each plaintiff as well as the City. Therefore, the court must consider all the pertinent factors in selection an equitable duration for the front pay ordered for each plaintiff in this case.

Of course, plaintiff Michael Timothy has already attained the CFD rank of Battalion Chief, so no front pay award to him is warranted. He, however, is the only plaintiff of the ten to have attained the rank of Battalion Chief in the fourteen years this case has been pending. It took Michael Timothy eight and one-half years until April 1, 2000, after he was promoted to Lieutenant on September 1, 1991 to attain the Battalion

10

Chief's rank through the CFD promotional process. Six and one-half years of that time was spent by Michael Timothy as a Captain, a position to which he was promoted on August 16, 1993. Michael Timothy's rise from Lieutenant to Captain from September 1, 1991 to August 16, 1993, a period of 23 months, is no longer possible because of a provision in the Labor Contact (Plaintiff's Exhibit 12-A, page 41) between the City and the Fire Fighters Union Local #2. According to that contract a member of the CFD must occupy the position immediately below Captain and immediately below Battalion Chief for at least 30 months before a promotion is allowed to those respective ranks regardless of the promotional exam score achieved. Consequently, a total of 60 months or 5 years of waiting, first in the rank of Lieutenant before promotion to Captain, and then in Captain before promotion to Battalion Chief is possible.

Considering all the equitable factors the court believes that the City should pay front pay to the plaintiffs, who have not yet attained the CFD rank of Captain, for a period of twelve years, with such front pay periodic payments terminating if the plaintiff leaves the CFD before March 1, 2014, because the time it takes to make Captain then Battalion Chief is so long.

If any plaintiff desires to maintain that front pay salary level after the twelve years ordered herein, he will have to attained the appropriate CFD rank within that time by taking, passing and scoring high enough on the appropriate CFD promotional exams to be promoted in the normal course by the CFD with the required 30 month minimal wait in each CFD career service position. This order provides each such plaintiff with the incentive and the opportunity to do so. Twelve years is a reasonable time to allow a plaintiff, who has not done so, to reach his desired CFD career service rank. The CFD Captain's and Battalion Chief's promotional examinations are given by the City about once every five to seven years. History has shown that the lists resulting promotional exams are used for the duration as the City desires. In fact, the City has complete and unfettered discretion, in determining the timing and nature of the CFD's promotional exams as well as in determining the number of persons promoted from a particular exam's results. The court believes the City

will act in good faith and in compliance with the law. The court and the public expect no more and no less from the City.

Additionally, several of the plaintiffs, as shown by the evidence presented at the trial, still suffer from the emotional effects of the City's discrimination. It has been difficult for certain of the plaintiffs to study and succeed on the promotional exams which were given by the City while this litigation has been pending. Unfortunately, this litigation for these plaintiffs may not end with the entry of judgments. If the City appeals, at least two more years of anguish and uncertainty will be thrust into their lives Consequently, to accord each individual plaintiffs who has not attained the rank of Captain or Battalion Chief, a full and fair opportunity now to do so, a front pay period of twelve years is necessary. For Captain Martin Wirtz, who has already attained the CFD rank of Captain, the court believes ten years front pay is appropriate to allow him to attain Battalion Chief. He does not have some of the impediments other plaintiffs still have, but he along with the others may have to endure an appeal and the time associated with it if the City seeks an appeal from the judgments entered here.

Of course, when any plaintiff attains the higher promotional rank for which that plaintiff is awarded front pay under this court's orders, the City will be in compliance with this order by paying that promoted plaintiff his regular periodic wages at the CFD rank he has attained. No more is required. If by the end of the front pay period, a plaintiff has not attained the higher rank, then, after the front pay period has expired, the City need only pay that plaintiff the appropriate wages for whatever rank he has actually attained at the CFD.

## V. PENSION BENEFITS

No plaintiff should be deprived of any pension benefits resulting from the City's intentional race discrimination against him. To allow such a result would not be a fair and equitable resolution of this case. Each plaintiff's circumstances is unique. Consequently, the court has fashioned, in the individual judgment

12

order to be entered as to each plaintiff's individual claims, a remedy that takes into account the equitable positions of each individual plaintiff and the City. Bearing in mind that the pension rights and obligations of each plaintiff and the City are both statutory and contractual, the court, in fashioning each judgment order, has attempted to evaluate the equities to rectify, to the extent possible, the City's wrongful conduct as shown by the evidence in the case.

The City's obligation, under this court's judgments, is to recognize and fund the appropriate pension for each individual plaintiff as set forth in the judgment order pertaining to that plaintiff. Each plaintiff's obligation is to provide the appropriate employee contributions to fulfill his funding requirements as he would have had to do if he had been promoted without the effect of City's discrimination. The ending time of retirement or separation from CFD active membership, whether separation is voluntary or as a result of disability, is likewise the result of the court's balancing the equities among the parties.

The court believes that a lump sum, discounted payment either as front pay or as pension benefits does not take into account that each of these plaintiffs have either remained fully employed by the CFD or are on duty disability from the CFD. Consequently, this court's intent is to have both the front pay and the pension benefits ordered in this case for each plaintiff to be affected by the future career decisions that plaintiff may make, as well as the timing of those decisions by each plaintiff. The goal of the court is to have the plaintiffs' front pay and pension benefits be provided to them, in the same manner as though each plaintiff had been promoted without the delay which resulted from the City's wrongful conduct.

## CONCLUSION

As this court stated in a comment it made at the conclusion of an earlier, lengthy trial of a group of cases between the City and numerous plaintiffs who were members of the CFD who, like these plaintiffs, had not been promoted in a timely manner because of the City's policy of affirmative action over a period of years:

13

These non-minority plaintiffs suffered intentional discrimination by the CFD as did African-Americans and Hispanics in the past according to the evidence. The court empathizes with anyone who is victimized by discrimination and looks forward to that day when racial and ethnic discrimination, as well as the vestiges thereof, are truly in the past. Chicago Fire Fighters Union Local No. 2 v. City of Chicago, 1999 WL 1289125, *86 (N.D. Ill.)

Unfortunately, until this and other cases similar to it are fully resolved, the sting of race discrimination in the CFD will remain as a part of the lives of many of the CFD's members. Therefore, this court urges a prompt resolution.

For the reasons stated herein and in open court on February 28, 2002, the court directs that draft judgment orders stating this court's determinations as to each of the ten plaintiff-intervenor's damages claims presented at the February 2002 trial in this case be enter. The court, pursuant to Federal Rules of Civil Procedure 54(b), makes the express determination that there is no just reason for delay and expressly directs the entry of judgment against the City and in favor of each individual plaintiff as set forth in the judgments orders signed this day by this court as to the claims of each of the ten plaintiffs whose claims have come on for trial in this case.

ENTER:

*James F. Holderman*

JAMES F. HOLDERMAN
United States District Judge

DATED: February 28, 2002

14