Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 88 C 3773 | **DATE** | 5/30/2002 |
| **CASE TITLE** | CLOUD et al vs. CITY OF CHICAGO | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Enter Memorandum Opinion directing entry of judgments.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| ☐ | No notices required, advised in open court. | | Document Number |
| ☐ | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | MAY 3 1 2002 date docketed | 708 |
| ☐ | Notified counsel by telephone. | | |
| ☐ | Docketing to mail notices. | docketing deputy initials | |
| ☐ | Mail AO 450 form. | 5/30/2002 | |
| ☐ | Copy to judge/magistrate judge. | date mailed notice | |
| JS | courtroom deputy's initials | Date/time received in central Clerk's Office | JS mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RICHARD CLOUD, MICHAEL GACKI, )
CLIFFORD GARTNER, GEORGE HEALY, )
STEVEN KOLECKI, MICHAEL OLIVER, )
JOHN PIWINSKI, THOMAS TERVANIS, )
AND VICTOR WALCHUK, )
)
    Plaintiff-Intervenors, )
) No. 88 CV 3773
vs. ) (Damages Trial No 2)
)
CITY OF CHICAGO, ) Judge James F. Holderman
    a municipal corporation )
)
    Defendant. )

**DOCKETED**
**MAY 3 1 2002**

## MEMORANDUM OPINION DIRECTING ENTRY OF JUDGMENTS

On October 4, 2000, a jury returned a verdict in this case finding that the Chicago Fire Department ("CFD") 1986 Lieutenant's Examination did not discriminate against minorities. That finding was supported by a preponderance of the evidence. That evidence established that the defendant City of Chicago ("City") was liable to the class of white plaintiff-intervenors whose promotions to the rank of Lieutenant in the CFD were delayed or denied as a result of the City's unconstitutional, intentional use of race in the making of the City's decisions regarding promotions to the rank of Lieutenant in the CFD from the CFD's 1986 Lieutenant's Examination Promotional List. After that verdict, discovery proceeded regarding the individual class members' respective damages claims.

On February 11, 2002, the trial of ten plaintiffs' damages claims began ("Damages Trial No. 1"). The jury returned its verdicts on February 20, 2002 and judgments were entered on March 1, 2002. On May 6, 2002, the jury trial as to the damages claims of the nine individual

708

plaintiffs named in the caption above commenced ("Damages Trial No. 2"). On May 17, 2002, the jury returned a verdict in Damages Trial No. 2, as to the amount of back pay damages owed by the City to each of the nine individual plaintiffs in that trial. That jury also determined the emotional distress damages suffered by each of these nine individual plaintiffs. The jury additionally made specific findings as to the dates and probability each of the nine plaintiffs would have been promoted beyond the CFD rank of Lieutenant to the CFD rank of Captain, as well as the dates and probability each plaintiff would have been promoted to the CFD rank of Battalion Chief had each plaintiff's promotion to the CFD rank of Lieutenant not been delayed or denied by the City's intentional race discrimination.

The court has considered the evidence pertinent to the equitable issues that all parties agree are the court's responsibilities to decide: reinstatement, front pay, pension benefits, and the application of prejudgment interest to the jury's back pay determinations. This opinion plus the court's comments made in open court at the conclusion of Damages Trials Nos. 1 and 2 constitute this court's findings and conclusions on those equitable issues.

## I. THE JURY'S VERDICTS

The jury's general verdicts as to the damages owed by the City to each plaintiff were follows:

| Plaintiff | Back Pay Damages | Emotional Distress Damages |
|---|---|---|
| Richard Cloud | $ 99,159.00 | $182,000.00 |
| Michael Gacki | $ 5,992.00 | $ 94,100.00 |
| Clifford Gartner | $126,794.00 | $177,000.00 |
| George Healy | $ 92,053.00 | $130,000.00 |
| Steven Kolecki | $ 55,513.00 | $104,000.00 |
| Michael Oliver | $113,725.00 | $195,000.00 |
| John Piwinski | $ 78,381.00 | $145,000.00 |
| Thomas Tervanis | $100,509.00 | $232,000.00 |
| Victor Walchuk | $187,256.00 | $220,000.00 |

2

The jury's answers to the specific written questions regarding each plaintiff's promotional probabilities and the probable dates of promotion had the City not delayed or denied each plaintiff's promotion to the CFD rank of Lieutenant were consistent with the procedure followed by the district judge in Bishop v. Gainer, 272 F.3d 1009, 1016 (7th Cir. 2001) and were as follows:

| Plaintiff | Probability of Promotion to Captain | Probable Date to Captain | Probability of Promotion to Battalion Chief | Probable Date to Battalion Chief |
| --- | --- | --- | --- | --- |
| Richard Cloud | 100% | 7/1/96 | 100% | 2/16/02 |
| Michael Gacki | 0% | ----- | 0% | ---- |
| Clifford Gartner | 100% | 7/1/96 | 51% | 2/16/02 |
| George Healy | 100% | 8/1/95 | 0% | ---- |
| Steven Kolecki | 100% | 1/1/96 | 49% | 2/16/02 |
| Michael Oliver | 90% | 8/16/93 | 100% | 2/1/98 |
| John Piwinski | 100% | 7/1/96 | 0% | ----- |
| Thomas Tervanis | 100% | 2/1/98 | 0% | ---- |
| Victor Walchuk | 100% | 8/16/93 | 100% | 3/1/97 |

Before deliberating on these verdicts, the jury was properly instructed on the law. Among those instructions, the jury was told:

> In determining the amount of any damages, both the back pay damages and the emotional distress damages, that you decide to award, you should be guided by dispassionate common sense. You must use sound discretion in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages by way of punishment or through sympathy. You must not engage in speculation, conjecture or guess work. On the other hand, the law does not require that the Plaintiff prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as circumstances permit.

The jury clearly heeded the instructions because the jury's verdicts as to each plaintiff's damages are each fully supported by the evidence, bear a rational connection to the evidence, are not excessive, and appear to be in no way the product of passion, see DeBiasio v. Illinois Central

3

Railroad, 52 F.3d 678, 687-88 (7th Cir. 1995); Gorlikowski v. Tolbert, 52 F.3d 1439, 1446 (7th Cir. 1995).

The jury's verdicts clearly reflect a reasonable analysis of the damages evidence presented by each individual plaintiff in the trial, both the back pay and emotional distress damages. The jury clearly and appropriately differentiated among the individual plaintiffs based upon the evidence relating to each of them such as their pertinent CFD promotional exam scores, their rankings and their record in the CFD, as well as the intangible factors, such as each individual plaintiff's dedication, determination, courage, and leadership skills. The jury's verdicts also fairly reflected the evidence as to the emotional distress caused to each of the plaintiffs by the City's discrimination.

## II. PREJUDGMENT INTEREST

Prejudgment interest has been recognized as an element of complete compensation and a normal incident of relief under Title VII. Leoffler v. Frank, 486 U.S. 549, 558 (1988). The parties agreed in the Final Pretrial Order ("FPTO") that one of the contested issues in the case was the amount of prejudgment interest, if any, to which each plaintiff was entitled. (Damages Trial No. 2, FPTO, p. 18; p. 20). In the Seventh Circuit, prejudgment interest is within the discretion of the district court to award, but remains presumptively available to victims of federal law violations, Hutchison v. Amateur Electronic Supply, Inc., 42 F.3d 1037, 1046-48 (7th Cir. 1994); Gorenstein Enterprises v. Quality Care-USA, 874 F.2d 431, 436 (7th Cir. 1989). These nine plaintiffs have had to wait since 1988 to have their claims adjudicated despite this court best efforts to get counsel to move this litigation along in a more timely manner. The whole time this case has been pending, the City has not had to act "as an uncompensated trustee or investment manger," In re Milwaukee Cheese Wisconsin, Inc., 112 F.3d 845, 849 (7th Cir. 1997), but has

4

had the complete benefit and full use of the back pay amounts it has owed and has not paid to these plaintiffs. There has been no reason presented to this court which is sufficient to overcome the presumption that prejudgment interest on the back pay amounts owed by the City to these nine plaintiff should be ordered as part of the judgments entered in favor of each of these plaintiffs and against the City at this time.

Unlike post-judgment interest, there, however, is no statutory rate of prejudgment interest. After entry of the individual judgment orders, the statutory post-judgment interest on each total monetary judgment will commence to accrue. As for the prejudgment interest, the parties here agreed on the calculational method that the court has used in computing the prejudgment interest which is part of the monetary damages owed by the City to each plaintiff. The amount was computed as the compound interest accumulated starting at August 1996 which is the midpoint of the general loss period on the full back pay damage award of each plaintiff using annual one-year U.S. Treasury obligation rates for each year of the period August 1996 to end of May 2002.

The following agreed upon annualized one-year rates were used.

| | |
|---|---|
| 1996 (5 months) | 5.52% |
| 1997 | 5.63% |
| 1998 | 5.05% |
| 1999 | 5.08% |
| 2000 | 6.11% |
| 2001 | 3.49% |
| 2002 (5 months) | 1.71% |

From these rates a prejudgment interest factor ("PIF") was determined by multiplying the annualized rates reduced to the number of months appropriate for each year. For the years 1997, 1998, 1999, 2000, and 2001, twelve months were used. For the year 1996, five months August through December, were used. For the year 2002, five months, January through May, were used

5

because the judgment as to the nine plaintiffs in this the second of the trials on damages could not be entered until the end of May 2002. The PIF calculation on the prejudgment interest amount is as follows:

$$PIF = (1.0230)(1.0563)(1.0505)(1.0508)(1.0611)(1.0349)(1.0071) = 1.3192$$

Using the PIF, the court has calculated the prejudgment interest owed by the City to each plaintiff as follows: each individual plaintiff's back pay, as determined by the jury's verdict to be owed by the City, was multiplied by the PIF and that individual plaintiff's back pay was then subtracted from that figure. The remaining amount is the prejudgment interest owed by the City to each plaintiff on that plaintiff's back pay. The individual prejudgment interest amounts which are due from the City as to each plaintiff and which are to be stated on each individual plaintiff's judgment order are as follows:

| Plaintiff | Back Pay Award | Prejudgment Interest |
| --- | --- | --- |
| Richard Cloud | $ 99,159.00 | $31,650.25 |
| Michael Gacki | $ 5,992.00 | $ 1,912.57 |
| Clifford Gartner | $126,794.00 | $40,470.98 |
| George Healy | $ 92,053.00 | $29,382.11 |
| Steven Kolecki | $ 55,513.00 | $17,719.02 |
| Michael Oliver | $113,725.00 | $36,299.53 |
| John Piwinski | $ 78,381.00 | $25,018.19 |
| Thomas Tervanis | $100,509.00 | $32,081.16 |
| Victor Walchuk | $187,256.00 | $59,769.66 |

### III. REINSTATEMENT

Under Title VII, this court is authorized "to order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . ., or any other equitable relief as 2000e-5(g)(1)". Each plaintiff, according to the jury's verdicts and answers which are well-supported by a preponderance of the

6

evidence, who has not otherwise advanced, would have advanced beyond the CFD rank of Lieutenant. The parties had stipulated before the trial that each plaintiff would have become a Lieutenant had it not been for the City's discriminatory acts of first promoting others to Lieutenant on the basis of race.

It is very understandable why each plaintiff requests the remedy of reinstatement to the rank each would probably have attained were it not for the City's wrongful conduct. The court certainly appreciates each plaintiff's position, but despite the jury's individual assessments of the probabilities of advancement based on the evidence, the reality is that no ranking commanding officer in the CFD who attained a promotion in rank because a federal judge ordered reinstatement to that rank would, receive the same the respect and confidence from his subordinates and peers when making decisions and giving orders at the scene of a fire or elsewhere as another CFD officer who achieved his promotion in rank through his success on the rigorous promotional tests typically used by the CFD to determine career service promotions. Indeed, though each plaintiff deserves to hold the respective rank denied him by the City's unlawful conduct, this court, in considering all the equities including the public's interest, does not believe court-ordered reinstatement promotions in rank is an appropriate equitable resolution, beyond that to which the City has already agreed. That agreement by the City allows for the promotion of each plaintiff to the CFD rank of Lieutenant retroactive to the date each should have advanced to the rank of Lieutenant based on the 1986 Lieutenant's Exam Promotional List had the City not unlawfully discriminated against him. To attain the CFD career service rank which each plaintiff desires to have and to achieve the proper respect and confidence from peers, subordinates and the public, each of the plaintiffs, who have not already done so, will have to succeed on the appropriate CFD promotional exams and abide by the CFD promotional process conducted in a fair and unbiased

7

manner. No other way of advancement in the CFD is equitably appropriate considering all of the equitable factors. Therefore, any further court-ordered reinstatement to higher CFD career service ranks, in this court's view, is equitably unavailable to these plaintiffs under the circumstances presented here.

## IV. FRONT PAY

Because reinstatement to the higher CFD career service ranks which the jury found probably would have been attained by these plaintiffs are, in this court's view, unavailable from an equitable standpoint, this court finds that awarding front pay which is reasonable in amount and duration is appropriate as an equitable remedy in lieu of reinstatement. The Seventh Circuit in Williams v. Pharmcia, 137 F.3d 944, 951 (7th Cir. 1998) stated:

> The district judge approached front pay as an equitable remedy, deciding it on his own rather than submitting it to the jury. We approve this course of action and join the other circuits that have held that front pay may be awarded under Title VII in cases where reinstatement is unavailable. See, e.g. Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1177 n. 7 (2d Cir. 1996); Winsor V. Hinckley Dodge, Inc., 79 F.3d 996, 1002 (10th Cir. 1996); Weaver v. Casa Gallardo, 922 F.2d 1515, 1528 (11th Cir. 1991); Shore v. Federal Express Corp., 777 F.2d 1155, 1159 (6th Cir. 1985).

As for determining the amount of front pay that equitably should be paid to each plaintiff, the evidence established that seven of the eight plaintiffs who had not already been promoted to the rank of Captain had a 100% probability of promotion to Captain in or before the year 1999, and that plaintiff Michael Oliver had a 90% chance of promotion to Captain on August 16, 1993. The jury also found that three of the plaintiffs had a 100% of being promoted to Battalion Chief: Richard Cloud on February 16, 2002; Michael Oliver on February 1, 1998; and Victor Walchuk on March 1, 1997. Additionally, the jury found Clifford Gartner had a 51% probability and Steven Kolecki had a 49% probability of promotion to Battalion Chief on February 16, 2002.

Therefore, the court finds that it is equitable and appropriate to award an amount of front pay starting on May 31, 2002, the date of entry of judgment, to each of the plaintiffs who have not otherwise attained those respective CFD ranks. Therefore, the court believes that, in lieu of reinstatement, starting on May 31, 2002, plaintiffs who have been determined to have lost a 100% chance to higher CFD rank should commence receiving no less than the CFD salary of that higher as their regular periodic wages, and each plaintiff who have been determined to have lost a less than 100% chance to a higher rank should receive in addition the lost percentage of the difference between the wages of the highest CFD he has either attained or had a 100% probability of attaining according to the jury's answers and the wages of the CFD highest rank he had any lost chance probability of attaining above 0%. This is the equitable front pay owed to each of them by the City.

As the Seventh Circuit also stated in Williams, supra, 137 F.3d at 951:

> Front pay in the Title VII context is best understood as "a monetary award equal to the gain [the plaintiff] would have obtained if reinstated." Tobey v. Extel/JWP, Inc., 985 F.2d 330, 332 (7th Cir. 1993); see also Avitia v. Metropolitan Club of Chicago, Inc., 49 F.3d 1219, 1232 (7th Cir. 1995) (describing front pay as "a substitute for reinstatement"). Generally, front pay is awarded as a substitute remedy only when reinstatement is inappropriate, such as when "There [is] no position available or the employer-employee relationship [is] pervaded by hostility." McNeil v. Economics Lab., Inc., 800 F.2d 111,118 (7th Cir. 1986), cert. denied, 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987), overruled on other grounds, Coston v. Plitt Theaters, Inc., 860 F.2d 834, 836 (7th Cir. 1988).
>
> Title VII explicitly authorized reinstatement as an equitable remedy; front pay is the functional equivalent of reinstatement because it is a substitute remedy that affords the plaintiff the same benefit (or as close an approximation as possible) as the plaintiff would have received had she been reinstated. As the equivalent of reinstatement, front pay falls squarely within the statutory language authorizing "any other equitable relief."

Of course, limiting front pay awards to a reasonable duration is appropriate. The goal of front pay is to replicate the amount of pay a plaintiff would have obtained had reinstatement been available. Id. at 953. A front pay award should only last until the employee can reasonably be expected to have moved on to similar or superior employment. Id. Applied to the facts here, the front pay amounts ordered by the court should only last so long as is reasonable to allow the plaintiffs to attain the actual CFD promotion to the upper CFD career service ranks which the facts showed each plaintiff would probably have previously attained had the City not intentionally engaged in race discrimination. The court believes that balancing the equities on an individual basis is necessary to fashion a proper and equitable result for each plaintiff as well as the City. Therefore, the court must consider all the pertinent factors in selection an equitable duration for the front pay ordered for each plaintiff in this case.

According to that contract a member of the CFD must occupy the position immediately below Captain and immediately below Battalion Chief for at least 30 months before a promotion is allowed to those respective ranks regardless of the promotional exam score achieved. Consequently, a total of 60 months or 5 years of waiting, first in the rank of Lieutenant before promotion to Captain, and then in Captain before promotion to Battalion Chief is possible.

Considering all the equitable factors the court believes that the City should pay front pay to the plaintiffs, who have not yet attained the CFD rank of Captain, for a period of twelve years, with such front pay periodic payments terminating if the plaintiff leaves the CFD before March 1, 2014, because the time it takes to make Captain then Battalion Chief is so long.

If any plaintiff desires to maintain that front pay salary level after the twelve years ordered herein, he must have attained the appropriate CFD rank within that time by taking, passing and scoring high enough on the appropriate CFD promotional exams to be promoted in the normal

course by the CFD with the required 30 month minimal wait in each CFD career service position. This order provides each such plaintiff with the incentive and the opportunity to do so. Twelve years is a reasonable time to allow a plaintiff, who has not done so, to reach his desired CFD career service rank. The CFD Captain's and Battalion Chief's promotional examinations are given by the City about once every five to seven years. History has shown that the lists resulting promotional exams are used for the duration as the City desires. In fact, the City has complete and unfettered discretion, in determining the timing and nature of the CFD's promotional exams as well as in determining the number of persons promoted from a particular exam's results. The City has said that it intends to administer the next CFD Battalion Chief's exam in December 2002 or January 2003 and the next Captain's exam near the end of 2003. Although there are no guarantees, the court believes the City will act in good faith and in compliance with the law. The court and the public expect no more and no less from the City. However, even if the City were to administer the next CFD promotional exams as intended and each of the plaintiffs who have already attained the rank of Lieutenant were to take and pass the 2003 Captain's exam, the next Battalion Chief's exam will probably not be until 2008, and the promotions therefrom will probably continue through 2013. If any plaintiff taking the next CFD Captain's exam were not to be promoted from that exam, the next Captain's exam will probably not be until 2009 with promotions therefrom continuing through 2014.

Additionally, several of the plaintiffs, as shown by the evidence presented at the trial, still suffer from the emotional effects of the City's discrimination. It has been difficult for certain of the plaintiffs to study and succeed on the promotional exams which were given by the City while this litigation has been pending. Unfortunately, this litigation for these plaintiffs may not end with the entry of judgments. If the City appeals, at least two more years of anguish and uncertainty

11

will be thrust into their lives while the case remains pending on appeal. Consequently, to accord each individual plaintiff, who has not attained the rank of Captain or Battalion Chief, a full and fair opportunity now to do so, a front pay period to March 1, 2014 is necessary and equitable.

Of course, when any plaintiff attains the higher promotional rank for which that plaintiff is awarded front pay under this court's orders, the City will be in compliance with this order by paying that promoted plaintiff his regular periodic wages at the CFD rank he has attained. No more is required. If by the end of the front pay period, a plaintiff has not attained the higher rank, then, after the front pay period has expired, the City need only pay that plaintiff the appropriate wages for whatever rank he has actually attained at the CFD.

## V. PENSION BENEFITS

No plaintiff should be deprived of any pension benefits resulting from the City's intentional race discrimination against him. To allow such a result would not be a fair and equitable resolution of this case. Each plaintiff's circumstances is unique. Consequently, the court has fashioned, in the individual judgment order to be entered as to each plaintiff's individual claims, a remedy that takes into account the equitable positions of each individual plaintiff and the City. Bearing in mind that the pension rights and obligations of each plaintiff and the City are both statutory and contractual, the court, in fashioning each judgment order, has attempted to evaluate the equities to rectify, to the extent possible, the City's wrongful conduct as shown by the evidence in the case.

The City's obligation, under this court's judgments, is to recognize and fund the appropriate pension for each individual plaintiff as set forth in the judgment order pertaining to that plaintiff. Each plaintiff's obligation is to provide the appropriate employee contributions to fulfill his funding requirements as he would have had to do if he had been promoted without the

12

effect of the City's discrimination. The ending time of retirement or separation from CFD active membership, whether separation is voluntary or as a result of disability, is likewise the result of the court's balancing the equities among the parties.

The court believes that a lump sum, discounted payment either as front pay or as pension benefits does not take into account that each of these plaintiffs have either remained fully employed by the CFD or are on duty disability from the CFD. Consequently, this court's intent is to have both the front pay and the pension benefits ordered in this case for each plaintiff to be affected by the future career decisions that plaintiff may make, as well as the timing of those decisions by each plaintiff. The goal of the court is to have the plaintiffs' front pay and pension benefits be provided to them, in the same manner as though each plaintiff had been promoted without the delay which resulted from the City's wrongful conduct.

## CONCLUSION

As this court stated in a comment it made at the conclusion of an earlier, lengthy trial of a group of cases between the City and numerous plaintiffs who were members of the CFD who, like these plaintiffs, had not been promoted in a timely manner because of the City's policy of affirmative action over a period of years:

> These non-minority plaintiffs suffered intentional discrimination by the CFD as did African-Americans and Hispanics in the past according to the evidence. The court empathizes with anyone who is victimized by discrimination and looks forward to that day when racial and ethnic discrimination, as well as the vestiges thereof, are truly in the past. Chicago Fire Fighters Union Local No. 2 v. City of Chicago, 1999 WL 1289125, *86 (N.D. Ill.)

Unfortunately, until this and other cases similar to it are fully resolved, the sting of race discrimination in the CFD will remain as a part of the lives of many of the CFD's members. Therefore, this court urges a prompt resolution.

For the reasons stated herein and in open court, the court directs that draft judgment orders stating this court's determinations as to each of the nine plaintiff-intervenor's damages claims determined at Damages Trial No. 2 in this case be entered. The court, pursuant to Federal Rules of Civil Procedure 54(b), makes the express determination that there is no just reason for delay and expressly directs the entry of judgment against the City and in favor of each individual plaintiff as set forth in the judgments orders signed this day by this court as to the claims of each of the nine plaintiffs whose claims came on for trial in May 2002 in this case.

ENTER:

*James F. Holderman*

JAMES F. HOLDERMAN
United States District Judge

DATED: May 30, 2002