IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHICAGO FIRE FIGHTERS UNION LOCAL NO. 2, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 88 C 3773 |
| CITY OF CHICAGO, et al., | ) ) ) | |
| Defendants. | ) ) | |
| FRED GAWRYK, et al., | ) ) | |
| Plaintiff-Intervenors, | ) ) | |
| v. | ) ) | |
| CITY OF CHICAGO, et al. | ) ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER REGARDING
CITY OF CHICAGO'S MOTION FOR SUMMARY JUDGMENT

JAMES F. HOLDERMAN, Chief Judge:

On September 20, 1989, about 260 white firefighters, who had taken the 1986 Fire Lieutenant's promotional examination and whose rank on the promotional roster from the exam was adversely affected by racial standardization of scores, filed an amended complaint against the defendant City of Chicago ("the City"), and two other now-dismissed defendants. In the complaint, the plaintiff-intervenors, seeking to intervene as plaintiffs, alleged a reverse-discrimination claim under Title VII of the Civil Rights Act, *see* 42 U.S.C. § 2000e *et seq*, an equal protection violation, and two other counts that have since been dismissed. In May 1990,

the plaintiff-intervenors were certified as a class. In 2000, a jury determined that the City had committed an unlawful employment practice by racially standardizing the test scores of the 1986 Fire Lieutenant's promotional examination when creating the promotional list in 1988. For the damages phase, the class was subdivided into Group A1, Group A2, Group B, and Group C. In 2001, the court dismissed the claims of the Group C firefighters, who would not have been promoted even if there had been no racial standardization of the test scores. The claims of Group A1, Group A2, and Group B still remained. After two trials on damages in the district court and an appeal to the 7th Circuit, the parties settled the claims of Groups A1 and A2. Now, the City files a motion for summary judgment on the remaining claims involving the "Group B" plaintiff-intervenor class. (Dkt. No. 1286.) For the reasons stated below, the court denies the motion.

## BACKGROUND

The court recites the facts underlying Group B's claims. The City standardized the 1986 Fire Lieutenant's promotional examination based on race and national origin[1] when the City created an unlawfully discriminatory promotion list in 1988 and began promoting individuals to the rank of lieutenant based on the racially standardized 1988 promotion list. In November 1991, the U.S. Congress enacted § 106 of the Civil Rights Act of 1991, which declared the adjustments of scores on promotional tests to be an unlawful employment practice. Following the passage of the Civil Rights Act of 1991, on January 29, 1992, the City took down the 1988 promotion list from the 1986 Fire Lieutenant's promotional examination. The City admits in

---

[1] For ease, the court will referred to the standardization based on race and national origin as "racially standardized."

part that the 1988 promotion list was taken down and further promotions not made from that 1988 list based on the City's view of the 1991 Civil Rights Act's prohibitions against racial standardization used to adjust the 1986 Fire Lieutenant's promotional examination test scores. The City does not present any additional basis for the decision to take down the 1988 promotional list other than its concern that the racial standardization violated the 1991 Civil Rights Act.

The City made a total of 208 promotions from the 1988 promotion list, with the last promotions occurring in September 1991. The parties dispute the number of promotions that the City had initially intended to make from the 1988 promotion list. The Group B class provides an affidavit from Robert T. Joyce, Deputy Commissioner of the Employment Services Division for the City of Chicago Department of Personnel during the relevant period, in which he attests that the City expected to promote 300 individuals from the 1988 promotion list. Appearing to concede that the City *expected* to make 300 promotions, the City asserts that it was not *bound* by the Personnel Rule to make the anticipated 300 promotions.

Class action litigation by white firefighters challenging the racially standardized 1988 promotion list has been ongoing since 1988. Before the City took down the 1988 promotion list, the plaintiff-intervenors filed a motion for partial summary judgment, seeking to enjoin the continued use of the 1988 promotion list and to require the publishing of a new non-racially standardized list for promotions. Meanwhile, the City voluntarily took down the 1988 promotion, and so the court in its September 15, 1992 order denied the plaintiff-intervenors' motion for partial summary judgment. The City's voluntary action mooted the plaintiff-intervenors' request to enjoin the use of the list, and, because the City had stopped making

promotions before the Act's enactment, there was no violation of the 1991 Civil Rights Act requiring the court to fashion the equitable relief of ordering the publishing of a new list. Furthermore, the court chose not to intervene with the City's wide discretion to manage its own internal affairs by ordering it to publish a new unstandardized list.

The litigation continued and, on October 4, 2000, a jury found that the City had unlawfully discriminated against the plaintiff-intervenors by racially standardizing the 1988 promotion list from the 1986 Fire Lieutenant's promotional examination. The court's next task was to determine damages. By joint agreement in February 2001, the certified class was divided in Groups A1 and A2, B and C. Groups A1 and A2 consisted of white firefighters who would have been promoted or would have been promoted sooner had the City not discriminatorily standardized by race the 1986 Fire Lieutenant's promotional examination. Group B were persons whose unstandardized scores were not high enough to place them in Group A. These plaintiff-interveners contend that they would have been promoted had the list from the 1986 Fire Lieutenant's eligibility test not been taken down in 1992. Group C consisted of those individuals whose scores would not have resulted in a promotion from the 1986 Fire Lieutenant's promotional examination.

The City then filed a motion for summary judgment on the claims of Groups B and C, alleging that these two groups did not have standing on their claims of damages. The court agreed with the City that Group C, who would have never been promoted even if the test had not been standardized based on race, lacked standing. But the court determined that genuine issues of material fact existed as to the standing of Group B because the parties disputed whether the City had taken down the list, and thus potentially deprived Group B of their promotion, after

realizing that the procedure used to create the list was discriminatory. Summary judgment was denied with regard to Group B on September 7, 2001.

Now, almost six years later, the City again files a motion for summary judgment on the Group B's remaining claims of employment discrimination Title VII of the Civil Rights Act of 1964, *see* 42 U.S.C. § 2000e *et seq*, and of Equal Protection, again alleging that Group B lacks standing and also asserting that Group B's claims are moot.

## LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, this court takes all facts and inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). In considering a motion for summary judgment, this court is not required to scour the record in search of evidence to defeat the motion; the nonmoving party must identify with reasonable particularity the evidence upon which the party relies. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898 (7th Cir. 2003). Finally, the evidence relied upon must be competent evidence of a type otherwise admissible at trial. *Stinnett v. Iron Work Gym/Executive*

*Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002).

ANALYSIS

A.     Standing

The City raises a standing argument, contending that, while Group B had standing to challenge the initial act of the racial standardization of scores, Group B does not have standing to pursue the loss chance of promotion from the cancellation of the 1988 promotion list in 1992. The City frames the standing issue by dividing Group B's allegations into challenges to two different acts: (1) the racial standardization of the scores; and (2) the City's taking down of the 1992 list. According to the City, even assuming that Group B has standing to challenge the racial standardization of the scores, the cancellation of the 1988 promotion list in 1992 is a separate claim and thus standing for the claim of racial standardization cannot confer standing on Group B for claims stemming from the cancellation of the promotion list.

Whether the racial standardization and the cancellation of the 1992 are two different claims, for which standing must be assessed separately, depends on the relationship between the racial standardization of test scores and the City's reasons for cancelling the 1988 promotion list. Taking the record in the light more favorable to the Group B plaintiffs, the court finds that the City cancelled the 1988 promotion list based on the unlawful racial standardization of the scores. It is undisputed that the City racially standardized the scores from the 1986 Fire Lieutenant's promotional examination to create the 1988 promotion list. The City used that promotion list until September 1991 and cancelled the list in January 1992, after the Civil Rights Act of 1991 was passed, making the use of racial standardization in test scores an unlawful discriminatory employment practice. Group B asserts and the City concedes, at least in part, that the 1988 list

6

was taken down because it was thought to be based on racial standardization made impermissible by the 1991 Civil Rights Act. The reason for the cancellation of the list stems from the initial impermissible racial standardization of the scores. Based on the existence genuine issues of material regarding whether the 1988 list would have been cancelled but for the racial standardization, the court rejects the City's dividing Group B's claim into the two separate injuries of the racial standardization of test scores and the cancellation of the promotion list.

Further, there are genuine issues of material fact regarding whether Group B suffered a concrete, cognizable injury under Title VII from the racial standardization of the test scores. Again, taking the facts in the light most favorable to Group B for purposes of summary judgment, the City expected to promote 300 individuals from the 1988 promotion list. Before the 1988 promotion list was cancelled in 1992, 208 promotions were made from the list. Hence, there was an expectation that approximately 92 more promotions would have been made if the list had not been taken down.

A reasonable jury could find that the 1988 promotional list would not have been cancelled but for the unlawful racial standardization, and, had racial standardization not been applied to the promotion list, the Group B plaintiff-intervenors would have been promoted as part of the 300 promotions expected to be made from the 1988 promotion list.[2] The court finds

---

[2] A similar case, *Petit v. City of Chicago*, 31 F.Supp.2d 604, 609 (N.D. Ill. 1998), is distinguishable. In that case, the court dismissed the Title VII claims of 240 individuals for lack of standing, finding that they would not have been promoted from the list even absent racial standardization. Although that case also involved the cancellation of a promotion list in September 1991, there is no discussion in the case about whether the list was taken down early and why, and whether the 244 plaintiffs would have been promoted, absent racial standardization, if the list had not been taken down early. The court can only assume that this argument was not before the court in *Petit*, unlike this case, where the argument has been raised by the plaintiffs.

this evidence sufficient to create genuine issues of material fact regarding standing; Group B is asserting one claim of injury from the racial standardization of test scores, which, according to evidence in the record, may have directly and proximately caused the early cancellation of the 1988 promotion list and led to the Group B plaintiff-intervenors' not receiving promotions.

The same disputes of material fact regarding the reason for cancelling the 1988 promotion list and whether the Group B plaintiffs would have been promoted if the list had not been cancelled defeats the City's argument that the Group B plaintiffs also have no cognizable § 1983 damages claims for emotional distress based on the racial standardization of the test scores. According to the City, Group B would not have been promoted, even without racial standardization, before the 1988 promotion list was cancelled, and so there is no injury. The City's argument ignores the genuine issues of material fact regarding why the promotion list was taken down. If proven that the promotion list was cancelled due to the racial standardization of test scores and that Group B would have been promoted from the 1988 list if it had not been cancelled and if racial standardization had not been used, then Group B would be able to establish standing for its § 1983 claims. Genuine issues of material fact also exist as to whether Group B has standing to pursue its § 1983 claims.

The court also notes that the court's analysis in this memorandum opinion is consistent with its 2001 order, in which this court found that Group B had standing to pursue its claims. Although the City now asserts that the reasoning of the court's 2001 opinion was not clear, the City never sought clarification of the court's reasoning through a motion under Federal Rule of Civil Procedure 59(e). Moreover, for its standing argument in the pending motion, the City has cited only to a taxpayer-standing case, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. —, 126 S. Ct.

8

1854 (2006), as relevant, new case law since the 2001 opinion was issued, arguing that Group B's claims regarding the cancellation of the 1988 promotion list do not flow from racial standardization injury. But, the court finds the case to be not applicable. Taxpayer standing, which in essence seeks veto power over government financial spending decisions, is a wholly different issue from the analysis of whether a Title VII plaintiff has suffered an injury due to admitted racial standardization of test scores. Further, unlike *DaimlerChrysler*, the court does not understand Group B to be raising two separate claims: one based on racial standardization and one based on the cancellation of the 1988 promotion list. As discussed above, the court has found that genuine issues of material fact exist as to whether the racial standardization of the 1986 Fire Lieutenant's promotional examination was the but-for cause of the cancellation of the 1988 promotion list.

### B. Mootness

The City also argues that Group B's claim for injunctive relief, promotions, backpay, and front pay are moot based on Group B's failure to appeal the court's 1992 denial of their request for injunctive relief in the form of the publishing of a new unstandardized promotion list. According to the City, any claim by Group B for injunctive or prospective relief as a result of the racially standardized 1988 promotion list is moot, because the last promotion made from the 1988 list before it was canceled was in September 1991, and Group B individuals—unlike Group A—cannot point to a promotion that they could or should have received by September 1991. In support of its argument, the City argues that the court's 1992 order denying the plaintiffs' motion for partial summary judgment, which sought to enjoin promotions from the 1988 promotion list and to allow promotions from an unstandardized list, is binding for purposes of Group B's

claims for injunctive and equitable relief. The City asserts that the plaintiffs "cannot now attack the denial of their request for promotion from an unstandardized list because that decision is the law of case." (Def. Br. at 6.)

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). A defendant's change in conduct renders a plaintiff's claim for prospective relief moot. *Fed'n of Advertising Indust. Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 930 (7th Cir. 2003). Black's Law Dictionary defines "prospective damages" as "damages which have not yet accrued, at the time of the trial, but which, in the nature of things, must necessarily, or most probably, result from the acts or facts complained of." *Black's Law Dictionary* 392 (6th Ed. 1990). Where a plaintiff makes a claim for damages, the defendant's change in conduct cannot render a case moot. *Fed'n of Advertising Indust. Representatives, Inc.*, 326 F.3d at 930.

In arguing that Group B's claims for injunctive relief, backpay, front pay and other equitable remedies are moot, the City ignores Group B's claims for damages and applies an overly broad interpretation of prospective relief to include all equitable and injunctive relief, regardless of whether the relief is prospective or not. The Supreme Court held in *Powell* that Representative Powell's claim for back salary from the failure of the U.S. House of Representatives to seat him in the 90th Congress was not moot after the 90th Congressional session terminated and Representative Powell was seated in the 91st Congress. Like in *Powell*, Group B's claims for backpay and other damages stemming from the lost chance of promotion are not mooted by the taking down of the 1988 list, so long as Group B can establish a cognizable injury (as discussed in the section A on issue of standing). *See also Biondo v. City of*

10

*Chicago*, 382 F.3d 680, 688-91 (7th Cir. 2004) (recognizing that plaintiffs who suffered a legally cognizable injury of the lost chance of promotion may recover back pay, compensatory damages, and possibly front pay and retroactive seniority). Group B's injuries, if proven, stem from the racial standardization of the 1988 promotional list. Group B's seeking of relief from those injuries is not prospective and thus moot if Group B can establish that the 1988 list was taken down as a result of the impermissible racial standardization, causing the City to not make the number of promotions it intended to make from the list, and those in Group B would have been promoted but for the racial standardization. As seen from *Powell*, the existence of a claim for back pay is sufficient for the plaintiffs' claims to survive challenges for dismissal based on mootness.

Nor does the law of the case require dismissal of Group B's claims. The court's 1992 order, issued before a jury in 2000 assessed liability against the City for its racial standardization of the 1986 Fire Lieutenant's promotional examination, was a narrow ruling. The 1992 order declared as moot any claim by the plaintiffs to enjoin the use of the 1988 promotion list because the City had cancelled the list between the time of the plaintiff's motion for partial summary judgment and the court's ruling. With regard to the request by the plaintiffs to order the publishing of a non-racially standardized promotion list, the court held that no violation of the Civil Rights Act of 1991 had occurred based on the use of the 1988 promotion list that would allow the issuance of an injunction. The Civil Rights Act of 1991 did not apply retroactively, and the City had cancelled the 1988 list before the Act was in force. In rejecting the plaintiffs' request for injunctive relief, the court noted in dicta a disinclination to interfere with the City's dispatching of its internal affairs with regard to lawful promotion practices. As the language of

11

the 1992 order shows, the court's decision related only to whether a violation of the Civil Rights

Act of 1991 required the use of the court's injunctive powers. No decision was made regarding the plaintiff's claims that the racial standardization of the 1988 promotion list was unlawful. It was not until the jury verdict in 2000 that the City was found liable for creating the 1988 promotion list based on impermissible racial standardization of test scores. At the time of the 1992 order, liability had yet to be found based on the racial standardization of the 1988 list and the 1992 order by this court did not resolve the plaintiffs' claims with regard to the racial standardization done in 1988. The doctrine of law of the case based on the 1992 order does not bar Group B's claims for relief.

## CONCLUSION

Accordingly, the City of Chicago's motion for summary judgment on Group B's claims is denied. (Dkt. No. 1286.) The case is set for status at 9:00 a.m. on 8/23/07. The parties are strongly encouraged to continue their settlement talks.

ENTER:

*James F. Holderman*
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: July 23, 2007